# IN THE SUPREME COURT OF IOWA

No. 19–1276

Submitted October 14, 2020—Filed May 28, 2021

**STATE OF IOWA,**

Appellee,

vs.

**DAVID J. TREPTOW,**

Appellant.

Appeal from the Iowa District Court for Buchanan County, Kellyann M. Lekar, Judge.

A defendant challenges the factual basis supporting his guilty plea to a drug offense. **APPEAL DISMISSED.**

McDonald, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, Oxley, and McDermott, JJ., joined. Appel, J., filed a dissenting opinion.

Martha J. Lucey (argued), State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Zachary Miller (argued), Assistant Attorney General, and Shawn M. Harden, County Attorney, for appellee.

**McDONALD, Justice.**

David Treptow pleaded guilty to three drug-related offenses and was sentenced to an indeterminate term of incarceration not to exceed twelve years. In this direct appeal, Treptow contends there was not a factual basis supporting one of the convictions and his counsel provided constitutionally ineffective assistance in allowing Treptow to plead guilty in the absence of a factual basis. In addition to those issues, Treptow challenges the constitutionality of Iowa Code section 814.6 (2020), which limits the ability of a defendant to appeal as a matter of right from a conviction following a guilty plea, and Iowa Code section 814.7, which requires that claims of ineffective assistance of counsel be presented and resolved in the first instance in postconviction-relief proceedings rather than on direct appeal.

## I.

Police were dispatched to Treptow's residence on report of a domestic disturbance. Upon entering the residence, officers immediately smelled marijuana and observed what appeared to be marijuana in an ashtray on the coffee table. The officers asked a cotenant of the residence if she would grant consent to search the residence, and she granted consent. The officers searched the residence with the assistance of a canine unit. They discovered and seized controlled substances and paraphernalia in various locations inside and outside the residence. A subsequent lab report from the Division of Criminal Investigation showed the officers seized approximately .17 grams of methamphetamine, 885.33 grams of marijuana, and 81.62 grams of marijuana concentrate.

Treptow was charged with six controlled substances offenses, and he ultimately pleaded guilty to three of them: (1) possession with the intent to deliver marijuana, in violation of Iowa Code section 124.401(1)(*d*)

(2018); (2) failure to affix a drug tax stamp, in violation of Iowa Code section 453B.12; and (3) gathering where controlled substances are used (marijuana), enhanced as a second offense, in violation of Iowa Code sections 124.407 and 124.411. As part of the plea agreement, the State agreed to drop the habitual offender enhancements applicable to counts 1 and 2, to dismiss the remaining counts, and to dismiss a companion case against Treptow.

At the time he entered his guilty pleas, Treptow expressed his desire to proceed to immediate sentencing. The district court informed Treptow he had the right to delay sentencing, and Treptow stated he understood the right and waived the same. The district court informed Treptow he had the right to have a presentence investigation report prepared prior to sentencing, and Treptow stated he understood the right and waived the same. Finally, the district court informed Treptow that he had the right to file a motion in arrest of judgment and that if he did not file a motion in arrest of judgment he "would have to forever give up [his] right to challenge the validity of [his] guilty plea either before [the district court] or before an Appellate Court." Treptow stated he understood the right and waived the same. Treptow asked his counsel to make a statement on his behalf. Counsel informed the court Treptow desired "the paperwork be done as soon as possible so he can be sent to prison on the next available group." The district court accepted Treptow's guilty pleas and request for immediate sentencing and entered sentence that day, July 16, 2019.

II.

In 2019, the general assembly passed and the governor signed an omnibus crime bill effective July 1, 2019. *See* 2019 Iowa Acts ch. 140. We have interpreted and applied several provisions of the omnibus crime bill in recent decisions. *See generally Hrbek v. State,* ___ N.W.2d ___ (Iowa

2021); *State v. Tucker*, ___ N.W.2d ___ (Iowa 2021); *State v. Thompson*, 954 N.W.2d 402 (Iowa 2021); *State v. Boldon*, 954 N.W.2d 62 (Iowa 2021); *State v. Draine*, 936 N.W.2d 205 (Iowa 2019); *State v. Macke*, 933 N.W.2d 226 (Iowa 2019). These recent decisions provide guidance in resolving the challenges raised in this appeal.

This appeal addresses two provisions of the omnibus crime bill. First, Treptow challenges Iowa Code section 814.6. That provision now provides:

> 1. Right of appeal is granted the defendant from:
>
> *a.* A final judgment of sentence, except in the following cases:
>
> (1) A simple misdemeanor conviction.
>
> (2) An ordinance violation.
>
> (3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

Iowa Code § 814.6 (2020). In *State v. Tucker*, we examined the effect of this new law. *See* ___ N.W.2d at ___. We explained section 814.6 "restricts only a narrow class of defendants from pursuing a direct appeal as a matter of right: those who plead guilty to non-class A offenses and cannot articulate a legally sufficient reason to pursue a direct appeal." *Id.* In other words, section 814.6 "prohibits those who plead guilty to non-class A offenses from pursuing frivolous appeals as a matter of right." *Id.*

Second, Treptow challenges Iowa Code section 814.7. That statutory provision now provides:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief

purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

Iowa Code § 814.7. In *Tucker*, we explained this statute "merely diverts all claims of ineffective assistance of counsel to postconviction relief proceedings and requires they be resolved there in the first instance." ___ N.W.2d at ___. We explained claims of ineffective assistance of counsel can rarely can be resolved on direct appeal. *See id.* (collecting cases); *see also Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003) ("In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). Section 814.7 worked no significant change in appellate practice; the new law simply codified more strongly our "judicial practice stretching back for almost a half-century." *Tucker*, ___ N.W.2d at ___.

### III.

Treptow contends sections 814.6(1)(*a*)(3) and 814.7 violate the separation-of-powers doctrine as unconstitutional restrictions on the judicial power. We recently addressed the identical challenge in *Tucker* and concluded these two provisions did not violate the separation-of-powers doctrine. *See* ___ N.W.2d at ___. *Tucker* is dispositive on this issue:

> [S]ections 814.6(1)(*a*)(3) and 814.7, whether considered in isolation or in tandem, do not violate the separation-of-powers doctrine. The Iowa Constitution provides this court's appellate jurisdiction is subject to such restrictions as the legislature may prescribe. Iowa Const. art. V, § 4. The Iowa Constitution also tasks the legislature with the primary duty to provide for a system of practice in all Iowa Courts. *See id.* § 14. Here, the legislative department determined that defendants who plead guilty to non-class A offenses should not have the right to pursue an appeal without a showing of good cause. *See* Iowa Code § 814.6(1)(*a*)(3). The legislature also determined all claims of ineffective assistance of counsel must be resolved in the first instance in postconviction relief proceedings rather than on direct appeal. *See id.* § 814.7.

These decisions were within the legislative department's prerogative and not in derogation of the judicial power.

*Id.* at ___.

## IV.

Treptow contends the omnibus crime bill violates his constitutional right to equal protection of the laws. He argues section 814.6(1)(*a*)(3) makes an arbitrary distinction (1) between those convicted after trial and those convicted after a guilty plea and (2) between those convicted of a class "A" felony and those convicted of a non-class "A" felony. With respect to section 814.7, Treptow contends the statute makes an arbitrary distinction between those who were provided effective assistance of counsel in pleading guilty and those who were not provided effective assistance of counsel in pleading guilty. Our review is de novo. *See State v. Mitchell*, 757 N.W.2d 431, 434 (Iowa 2008) (applying de novo review to equal protection claims).

The United States and Iowa Constitutions guarantee the equal protection of the law to all persons. The Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Iowa Constitution provides, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. We have interpreted this provision of the Iowa Constitution to mean "similarly situated persons [should] be treated alike under the law." *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001) (en banc). At its core, the federal and state "equal protection guarantee requires that laws treat all those who are similarly situated with respect to the purposes of

the law alike." *Varnum v. Brien*, 763 N.W.2d 862, 883 (Iowa 2009) (emphasis omitted).

The first step in our equal protection analysis is to determine whether the challenged law makes a distinction between similarly situated individuals with respect to the purposes of the law. *See id.* at 882. This is a threshold test. *See id.* If the defendant "cannot show as a preliminary matter that [he is] similarly situated, [we] do not further consider whether . . . different treatment under a statute is permitted." *Id.*

We have already rejected the contention that section 814.6(1)(*a*)(3) draws unconstitutional distinctions between those convicted after trial and those convicted pursuant to a guilty plea. In *Tucker,* we concluded "those convicted after trial and those convicted pursuant to a guilty plea are not similarly situated for the purposes of appellate review." ___ N.W.2d at ___. We explained that those who plead guilty have acknowledged their guilt and waived their constitutional rights so the need for appellate review is not necessary in the same way as it is after trial. *See id.* at ___. Because those convicted after a guilty plea are not similarly situated to those convicted following trial, "[r]equiring those who plead guilty to establish good cause to pursue a direct appeal as a matter of right does not violate federal or state guarantees of equal protection of the laws." *Id.* at ___.

Treptow's next contention fares no better. Treptow contends section 814.6(1)(*a*)(3) makes an arbitrary distinction between those convicted of a class "A" felony and those convicted of other offenses. A class "A" felony is one punishable by a life sentence. *See* Iowa Code § 902.1(1). It is the maximum punishment authorized by Iowa law. Those convicted of an offense subject to the maximum punishment authorized by Iowa law are not similarly situated to those convicted of an offense subject to a lesser punishment. Persons committing different offenses or different levels of

offenses are not similarly situated for equal protection purposes. *See State v. Ceaser*, 585 N.W.2d 192, 196 (Iowa 1998) ("In other words, if the elements of the offenses are not the same, persons committing the crimes are not similarly situated and, therefore, may be treated differently for purposes of the Equal Protection Clause."), *overruled on other grounds by State v. Bruegger*, 773 N.W.2d 862 (Iowa 2009); *People v. Jones*, 350 N.E.2d 913, 915 (N.Y. 1976) (per curiam) (stating for the purposes of equal protection, "[T]he circumstances were not the same since defendant was convicted of a crime different than that of her codefendants").

Thus, our law draws numerous distinctions in the procedures afforded to defendants based on offense levels. For example, indigent defendants charged with a class "A" felony are appointed two lawyers while all other indigent defendants are appointed only one. *See* Iowa Code § 815.10(1)(*b*). Defendants charged with a class "A" felony are entitled to ten peremptory strikes, but defendants charged with anything other than a class "A" felony are entitled to only six peremptory strikes. *See* Iowa R. Crim. P. 2.18(9). Non-class "A" felons are entitled to have a presentence investigation report prepared prior to sentencing and misdemeanants are not. *See* Iowa Code § 901.2(2). The Iowa Rules of Criminal Procedure draw a distinction between felons and misdemeanants with respect to required procedures during plea proceedings. *See* Iowa R. Crim. P. 2.8(2)(*b*). And those convicted of a simple misdemeanor cannot invoke the jurisdiction of this court as a matter of right. *See* Iowa Code § 814.6(1)(*a*). There is no suggestion these classifications distinguish between similarly situated persons or violate principles of equal protection. The constitutional entitlement to equal protection does not prevent the state from affording those facing greater punishment additional procedural protections.

Finally, Treptow contends section 814.7 makes an unlawful distinction between those who received effective assistance of counsel during plea proceedings and those who did not. We are not sure what to make of this argument. The statute makes no distinction between classes of persons in this regard. The statute prohibits any defendant—those convicted following trial and those convicted following a guilty plea—from presenting a claim of ineffective assistance of counsel on direct appeal.

In any event, those asserting claims other than a claim of ineffective assistance of counsel are not similarly situated to those asserting claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel is more than an error preservation device; it is a substantive legal claim with its own elements. *See Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 2582–83 (1986) (distinguishing between ineffective-assistance-of-counsel claim and underlying constitutional claim); *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) ("While [the ineffective-assistance claim and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts."); *Wright v. State*, No. 16–0275, 2017 WL 1401475, at *2 (Iowa Ct. App. Apr. 19, 2017) (noting a direct legal claim and indirect legal claim presented within an ineffective-assistance framework are substantively different). A defendant asserting a claim of ineffective assistance of counsel must always show his "trial counsel failed to perform an essential duty and that this failure resulted in prejudice." *State v. Kress*, 636 N.W.2d 12, 20 (Iowa 2001).

"It is not unconstitutional or even unreasonable to treat as similarly situated only those parties whose cases are 'factually and legally similar' and 'share similar procedural histories.'" *Wright*, 2017 WL 1401475, at *3

(quoting *State ex rel. Brown v. Bradley*, 658 N.W.2d 427, 433 n.7 (Wis. 2003)). Thus, in *Hunt v. Nuth*, the United States Court of Appeals for the Fourth Circuit rejected a similar challenge to a Maryland law. *See* 57 F.3d 1327, 1336–37 (4th Cir. 1995). In Maryland, the appellate courts typically require defendants to raise claims of ineffective assistance of counsel in postconviction-relief proceedings. *See Mosley v. State*, 836 A.2d 678, 686 (Md. 2003). However, in Maryland, appellate review of postconviction-relief proceedings is discretionary. *See Hunt*, 57 F.3d at 1336 n.10. In *Hunt*, the postconviction applicant challenged this system, contending his equal protection rights were violated because he did not have the opportunity to present his claims of ineffective assistance of counsel to an appellate court as a matter of right. *See id.* at 1336–37. The Fourth Circuit rejected the contention:

> Hunt also raises an equal protection challenge to Maryland's system of post-conviction review. He contends that Maryland improperly distinguishes between defendants with constitutional claims cognizable on direct review, and those with claims that are only cognizable on post-conviction review. He claims that this unequal access to appellate review lacks a rational basis and violates equal protection guarantees. Thus, Hunt creates two classes of claims, rather than two classes of persons, and argues that these types of claims must be treated equally by Maryland. The State, however, has a legitimate interest in conserving judicial resources and need not provide the same review for each type of claim, particularly when Maryland already provides defendants with more than the constitutional minimum of opportunities for review. Therefore, we reject Hunt's claim that Maryland's discretionary post-conviction review system violates the Equal Protection Clause.

*Id.*

Because Treptow has not established he is similarly situated to a relevant comparator, we need not determine whether there is constitutionally sufficient justification for the distinctions drawn in the challenged statutes. *See State v. Dudley*, 766 N.W.2d 606, 616 (Iowa 2009)

("If a plaintiff cannot show preliminarily that persons in the two classes are similarly situated, we have concluded the court need not determine whether there is a constitutionally adequate basis for the persons' different treatment."); *Varnum*, 763 N.W.2d at 882. Requiring those who plead guilty to establish good cause to pursue a direct appeal as a matter of right and requiring all defendants to present claims of ineffective assistance of counsel in postconviction-relief proceedings rather than on direct appeal does not violate federal or state guarantees of equal protection of the laws. *See In re Morrow*, 616 N.W.2d 544, 548 (Iowa 2000) (en banc) ("If people are not similarly situated, their dissimilar treatment does not violate equal protection."); *see also People v. Ivester*, 286 Cal. Rptr. 540, 542–43 (Ct. App. 1991) (rejecting equal protection challenge to statute denying appeal from a judgment of conviction upon a plea of guilty unless the defendant filed a written statement of reasonable grounds that challenge the legality of the plea).

V.

Treptow argues the omnibus crime bill violates his constitutional right to due process. More specifically, Treptow argues section 814.7 interferes with the ability of appellate counsel to present claims of ineffective assistance on direct appeal and thus violates Treptow's right to due process. Stated differently, Treptow contends he has an absolute due process right to present claims of ineffective assistance on direct appeal. We review challenges to the constitutionality of a statute de novo. *See Mitchell*, 757 N.W.2d at 434.

Treptow's initial premise—that section 814.7 interferes with the right to effective assistance of counsel on direct appeal—is not sound. A criminal defendant is entitled to effective assistance of counsel on appeal. *See Ledezma v. State,* 626 N.W.2d 134, 141 (Iowa 2001) (en banc). The

right to the effective assistance of appellate counsel is the right to have counsel in an appeal and to have counsel perform competently in that appeal. *See id.* at 141–42. The right to the effective assistance of appellate counsel where direct appeal is available does not create an entitlement to direct appeal as a matter of right and a further entitlement to present any and all claims on direct appeal as a matter of right. Treptow does not cite any authority in support of such a claim, and we find none.

Further, the defendant's due process concerns are simply overstated. Requiring claims of ineffective assistance of counsel to be presented in the first instance in postconviction-relief proceedings is not uncommon. *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1, 4, 132 S. Ct. 1309, 1313 (2012) ("The State of Arizona does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review."); *State v. Spreitz*, 39 P.3d 525, 527 (Ariz. 2002) (en banc); *Wrenn v. State*, 121 So. 3d 913, 914–15 (Miss. 2013) (holding that defendant's conviction following a guilty plea could only be challenged under the postconviction statute rather than on direct appeal); *State v. Dell*, 967 P.2d 507, 509 (Or. Ct. App. 1998); *State v. Brouillard*, 745 A.2d 759, 768 (R.I. 2000) ("This Court repeatedly has held that it will not consider a claim of ineffectiveness of counsel that is raised for the first time on a direct appeal."); *Turner v. Commonwealth*, 528 S.E.2d 112, 115 (Va. 2000) (explaining claims of ineffective assistance must be brought in collateral proceedings); *State v. Rettig*, 416 P.3d 520, 521 (Utah 2017) (rejecting claim that "the legislature lacks the constitutional power to require that [the defendant] pursue his claim through the Post-Conviction Remedies Act").

In addition to states that disallow the presentation of claims of ineffective assistance on direct appeal, most state courts do not review

claims of ineffective assistance on direct appeal even when allowed because "[a] claim of ineffective assistance of counsel is generally not a basis for direct appeal and instead should be raised in a postconviction proceeding." 24 C.J.S. *Criminal Procedure and Rights of the Accused* § 2119 & n.1, at 85 (2016) (collecting cases). In the vast majority of states, the defendant must wait to develop and present his claim of ineffective assistance of counsel in postconviction-relief proceedings. *See* Eve Brensike Primus, *Effective Trial Counsel After* Martinez v. Ryan*: Focusing on the Adequacy of State Procedures*, 122 Yale L.J. 2604, 2613 n.39 (2013) (collecting cases and stating "[i]n the vast majority of states, however, defendants must wait until state collateral review to raise ineffective assistance of trial counsel claims"). This was true in Iowa prior to the passage of the omnibus crime bill. As we explained in *Tucker,* Iowa's appellate courts have been preserving most claims of ineffective assistance of counsel for development in postconviction-relief proceedings for half of a century. *See Tucker,* ___ N.W.2d at ___. The new law merely codified that practice in stronger form.

The practice of requiring claims of ineffective assistance of counsel to be resolved in the first instance in postconviction-relief proceedings is supported by a variety of legitimate interests. Among others:

> Considering a claim of ineffective assistance of counsel on direct appeal (1) deprives the State, in responding to the defendant's arguments, of the benefit of an evidentiary hearing, including trial counsel's testimony; (2) places [the appellate courts] in the role of factfinder with respect to evaluating counsel's performance; . . . and (4) constitutes a significant drain on [appellate court] resources in responding to such claims.

*State v. Nichols*, 698 A.2d 521, 522 (Me. 1997), *holding modified by Petgrave v. State*, 208 A.3d 371 (Me. 2019).

There is no due process right to present claims of ineffective assistance of counsel on direct appeal. Due process merely requires an opportunity to present those claims in some forum. For half of a century, Iowa, like most states, has resolved claims of ineffective assistance in postconviction-relief proceedings and not direct appeal. Iowa Code section 814.7 is consistent with that practice and does not violate due process.

VI.

Having concluded section 814.6(1)(*a*)(3) is constitutional and governs this appeal, we turn to the question of whether Treptow has established good cause to pursue this appeal as a matter of right. Treptow "bears the burden of establishing good cause to pursue an appeal of [his] conviction based on a guilty plea." *State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020); *see also* Iowa Code § 814.6(1)(*a*)(3) (stating that the provision prohibiting an appeal from a conviction where the defendant pleaded guilty does not apply "in a case where *the defendant establishes* good cause" (emphasis added)).

The statute does not define "good cause." *See id.* The parties propose very different interpretations of the statute. Treptow claims "good cause" should be defined broadly to allow for direct appeal as a matter of right whenever a defendant has presented "some colorable claim" on appeal. The State argues this is a low bar. It counters "good cause" should be defined narrowly to allow for an appeal only where the defendant's claim is "likely meritorious" and cannot be addressed elsewhere in the criminal justice system.

We need not resolve the parties' disagreement to resolve the question presented in this appeal. In *State v. Damme* and *State v. Boldon*, we stated that "good cause" in section 814.6 means a "legally sufficient reason." *Boldon*, 954 N.W.2d at 69 (quoting *Damme*, 944 N.W.2d at 104). What

constitutes a legally sufficient reason is context specific. *See Boldon*, 954 N.W.2d at 69; *Damme*, 944 N.W.2d at 104. In those cases, we concluded "that good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea." *Boldon*, 954 N.W.2d at 69 (quoting *Damme*, 944 N.W.2d at 105). We explained that "[a] sentencing error invariably arises after the court has accepted the guilty plea. This timing provides a legally sufficient reason to appeal notwithstanding the guilty plea." *Id.* (alteration in original) (quoting *Damme*, 944 N.W.2d at 105).

Here, Treptow has not established a legally sufficient reason to appeal as a matter of right. By definition, a legally sufficient reason is a reason that would allow a court to provide some relief. Here, there is no such possibility. When Treptow pleaded guilty and requested immediate sentencing, he waived his right to file a motion in arrest of judgment. His failure to file a motion in arrest of judgment precludes appellate relief. *See* Iowa R. Crim. P. 2.24(3)(*a*) ("A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal."). We thus cannot provide relief.

We have recognized two exceptions to this bar, but neither exception would allow for the possibility of relief on the facts of this case. First, we have recognized a defendant may challenge his guilty plea on appeal despite not filing a motion in arrest of judgment where the district court failed to adequately advise the defendant of the consequences of not filing a motion in arrest of judgment. *See State v. Loye*, 670 N.W.2d 141, 149– 50 (Iowa 2003) (explaining court's failure to advise of the consequences of the failure to file a motion in arrest of judgment reinstates the defendant's

right to appeal the legality of his plea). Here, Treptow was adequately advised of and waived the right.

Second, we have allowed a defendant to indirectly challenge his guilty plea on appeal despite not filing a motion in arrest of judgment "if the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Because we have just upheld the constitutionality of section 814.7, this court is without authority to decide ineffective assistance of counsel claims on direct appeal. Thus, the second exception no longer provides an avenue for relief on direct appeal.

Treptow argues this court need not decide his claim under the familiar ineffective-assistance-of-counsel framework. Instead, he argues, this court should adopt plain error review. We are disinclined to do so. We have repeatedly rejected plain error review and will not adopt it now. *See State v. Martin*, 877 N.W.2d 859, 866 (Iowa 2016); *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999).

The defendant has not advanced a legally sufficient reason to pursue an appeal as a matter of right. The defendant was adequately advised of the necessity of filing in a motion in arrest of judgment to challenge his guilty plea and the consequences of failing to do so. Upon being properly advised of his right and the consequences of waiving that right, the defendant waived the right and proceeded to immediate sentencing. The defendant has no right to assert a claim of ineffective assistance of counsel on direct appeal, and this court has no authority to decide a claim of ineffective assistance of counsel on direct appeal. Under the circumstances, the appellate courts cannot provide the defendant with relief. The defendant has thus not established good cause to pursue his appeal as a matter of right under section 814.6.

## VII.

Because Treptow has not established good cause to pursue a direct appeal as a matter of right, this court is without jurisdiction to hear the appeal.[1]

**APPEAL DISMISSED.**

All justices concur except Appel, J., who dissents.

---

[1]Treptow also challenges the constitutionality of Iowa Code section 814.29, which provides,

> If a defendant challenges a guilty plea based on an alleged defect in the plea proceedings, the plea shall not be vacated unless the defendant demonstrates that the defendant more likely than not would not have pled guilty if the defect had not occurred.

Treptow contends this provision violates the separation-of-powers doctrine. We decline to pass on the constitutionality of the statute given our conclusion that the court lacks jurisdiction in this matter. Judicial self-restraint imposes a duty upon this court to avoid constitutional questions where possible. *See State v. Trucke*, 410 N.W.2d 242, 243 (Iowa 1987) (en banc). "[W]e normally avoid constitutional claims when an appeal can be decided on other grounds." *State v. Kukowski*, 704 N.W.2d 687, 690 (Iowa 2005). Treptow's separation-of-powers challenge to section 814.29 will have to be developed, if at all, in postconviction-relief proceedings.

**APPEL, Justice (dissenting).**

I respectfully dissent. In my view, under either prior law or S.F. 589, the strictly legal issue posed in this case—whether there was substantial evidence in the record to support a conviction of the crime of gathering for drug purposes—may be considered on direct appeal through statutory interpretation.

With respect to constitutional issues that are raised by David Treptow in this case, I incorporate my discussion in my special concurrence in *State v. Tucker*, ___ N.W.2d ___, ___ (Iowa 2021), as if fully set out here.

**I. Consideration of Legal Question of Whether Guilty Plea is Supported by Substantial Evidence on Direct Appeal.**

**A. Introduction.** For many years, plea bargaining was forbidden, but now, criminal justice today "is for the most part a system of pleas, not a system of trials." *Missouri v. Frye*, 566 U.S. 134, 143, 132 S. Ct. 1399, 1407 (2012) (quoting *Lafler v. Cooper*, 566 U.S. 156, 170, 132 S. Ct. 1376, 1388 (2012)). In recent decades, disposition of criminal cases by plea bargaining has approached or exceeded ninety percent. Lindsey Devers, Bureau of Just. Assistance, *Plea and Charge Bargaining* 1 (2011); *see also McCarthy v. United States*, 394 U.S. 459, 463 n.7, 89 S. Ct. 1166, 1169 n.7 (1969) (stating 86% of convictions in federal district courts in 1968 were pleas). As noted by two prominent scholars, plea bargaining "is not some adjunct to the criminal justice system; it *is* the criminal justice system." Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992).

The decision to enter into a "plea is a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397

U.S. 742, 748, 90 S. Ct. 1463, 1468 (1970). As noted years ago in *Boykin v. Alabama*, the process of plea bargaining "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." 395 U.S. 238, 243–44, 89 S. Ct. 1709, 1712 (1969).

More recently, Justice Scalia observed that plea bargaining "presents grave risks of prosecutorial overcharging that effectively compels an innocent defendant to avoid massive risk by pleading guilty to a lesser offense." *Lafler*, 566 U.S. at 185, 132 S. Ct. at 1397 (Scalia, J., dissenting). *See generally* Boaz Sangero, *Safety from Plea-Bargains' Hazards*, 38 Pace L. Rev. 301, 306–21 (2018) (summarizing risks of false confession and subsequent pleas). Justice Scalia's observation has support in innocence cases uncovered through DNA analysis that were originally the product of plea bargaining. *See* Brandon Garrett, *Convicting the Innocent: Where Criminal Prosecutions Go Wrong* 150–53 (2011) (noting that of the first 330 DNA exonerations, eight percent, or twenty-seven, had pled guilty).

As a matter of due process, in order to enter into a plea bargain, the defendant must be competent. *Godinez v. Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 2685 (1993). The plea bargain must be made knowingly and voluntarily. *Brady*, 397 U.S. at 748, 90 S. Ct. at 1469. In order to be knowing and voluntary, the defendant must be aware of the consequences of the plea and comprehend the constitutional rights waived by the agreement. *Boykin*, 395 U.S. at 243–44, 89 S. Ct. at 1712.

In order to insure that plea bargains are entered into by defendants with "care and discernment," the United States Supreme Court promulgated Federal Rule of Criminal Procedure 11. Fed. R. Crim. P. 11 Advisory Committee's Note to 1983 Amendments. Under the rule as originally enacted in 1944, the court was required to make inquiries into

voluntariness, but later amendment specifically required the court to determine the underlying factual basis for the plea and personally address the defendant to ensure understanding of the consequences associated with the plea. *McCarthy*, 394 U.S. at 465–66, 89 S. Ct. at 1170. As noted in *McCarthy v. United States*, the rule was promulgated by the United States Supreme Court pursuant to its constitutional authority to supervise lower federal courts. *Id.* at 464, 89 S. Ct. at 1169.

The rule has two goals. *Id.* at 465, 89 S. Ct. at 1170. First, "it is designed to assist" district court judges "in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *Id.* Second, it "is intended to produce a complete record at the time the plea is entered of the factors relevant to [the] voluntariness determination." *Id.* Meticulous compliance with the rule thus discourages or at least provides for more expeditious disposition of the "often frivolous post-conviction attacks on the constitutional validity of guilty pleas." *Id.* The effect of noncompliance is that the defendant's guilty plea is set aside and the case remanded for another hearing at which he may plead anew. *Id.* at 471–72, 89 S. Ct. at 1173–74.

The Supreme Court concluded that prejudice to the defendant inheres in a failure to comply with rule 11 "for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of [the] plea." *Id.* An amendment to rule 11 and subsequent caselaw has, however, adjusted the prejudice requirements a certain extent. *See generally State v. Finney*, 834 N.W.2d 46, 51–55 (Iowa 2013) (discussing the amendment and caselaw which adopted a harmless error rule if the failure of complying with rule 11 does not affect substantial rights).

The requirement that a plea be supported by a factual basis advances several purposes. As noted by one commentator, the factual basis requirement "may (1) assist a judge in the voluntariness determination, (2) make appellate review of a plea less complex, (3) facilitate the rehabilitation of a defendant, and (4) provide protection for an innocent defendant." John L. Barkai, *Accuracy Inquiries for All Felony and Misdemeanor Pleas: Voluntary Pleas but Innocent Defendants?*, 126 U. Pa. L. Rev. 88, 95 (1977) (footnotes omitted).

Iowa caselaw generally followed the permutations of federal law. *See, e.g., Finney*, 834 N.W.2d at 55–60. In 1977, after legislative action, we promulgated a rule of our own related to plea bargaining. Iowa R. Crim. P. 2.8(2)(*b*). Rule 2.8(2)(*b*) requires the court to determine before accepting a plea that there is substantial evidence supporting the crimes for which the defendant has agreed to plead guilty. In addition, the rule requires the court to personally address the defendant, inform the defendant of, and personally make sure the defendant understands, (1) the nature of the charge, (2) the minimum and maximum punishment, (3) a conviction might impact the defendant's immigration status, (4) the defendant has a right to a jury trial, "the right to assistance of counsel, the right to confront and cross-examine witnesses . . . , the right not to be compelled to incriminate oneself, and the right to present witnesses" and have a compulsory process to secure them at trial, and (5) that by pleading guilty, there will be no further trial and that by pleading guilty, the defendant waves the right to a jury trial. *Id.*

Under our established approach to guilty pleas, this court on direct appeal considered attacks the legal validity of guilty pleas in certain circumstances. For example, a guilty plea not supported by substantial evidence could be reviewed on direct appeal through a claim that counsel

was ineffective for failure to object. *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014). Deficiencies in the plea colloquy required by rule 2.8(2)(*b*) could also be raised on direct appeal in certain circumstances. *State v. Weitzel*, 905 N.W.2d 397, 401–02 (Iowa 2017) (allowing direct appeal for failure to advise adequately about consequences of the plea). Such an approach is consistent with efficient disposition of the challenges. Where a strictly legal question is posed challenging the validity of a guilty plea *and no fact finding is required*, there is simply no point in referring such a claim to a postconviction-relief proceeding in district court.

Under our prior caselaw, Treptow would be entitled to relief as, in my view, the record does not establish a factual basis for his conviction of the crime of gathering under Iowa Code section 124.407 (2018). *See, e.g.*, *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999) (en banc) ("The district court may not accept a guilty plea without first determining that the plea has a factual basis."); *see also Gines*, 844 N.W.2d at 441 (same, quoting *Schminkey*). While there was sufficient evidence to support various other drug offenses to which Treptow pled guilty, there was no evidence in the record to support conviction of the marijuana gathering offense.[2]

---

[2]Treptow of course pled guilty to the various offenses. Thus, under federal law, he forfeits constitutional claims that arose prior to the plea bargaining process. *Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S. Ct. 1602, 1607–08 (1973). *But see State v. Ethington*, 592 P.2d 768, 769–70 (Ariz. 1979) (in banc) (holding state public policy prevents negotiation of waiver of right to appeal in context of plea bargaining); *People v. Butler*, 204 N.W.2d 325, 330 (Mich. Ct. App. 1972) (holding under the Michigan Constitution's due process clause the right to appeal may not be bargained away while pleading guilty). Under the best, but not universal, view of federal law, Treptow does not forfeit claims related to the formation of the plea bargaining itself. Specifically, a plea bargain does not prevent a defendant from attacking the plea itself as not supported by a factual basis. *See, e.g.*, *United States v. Culbertson*, 670 F.3d 183, 190 (2d Cir. 2012); *United States v. Lacey*, 569 F.3d 319, 323–24 (7th Cir. 2009); *United States v. Adams*, 448 F.3d 492, 502 (2d Cir. 2006); *United States v. Baymon* 312 F.3d 725, 727 (5th Cir. 2002); *United States v. McKelvey*, 203 F.3d 66, 69–70 (1st Cir. 2000). *But see United States v. Beck*, 250 F.3d 1163, 1166–67 (8th Cir. 2001); *United States v. Johnson*, 89 F.3d

The State claims, however, that we must follow the approach in S.F. 589, which took effect on July 1, 2019. 2019 Iowa Acts ch. 140, § 33 (codified at Iowa Code § 814.29 (2020)). Under the new approach established by S.F. 589, a defendant seeking to challenge a guilty plea on direct appeal must establish "good cause." *Id.* § 28(*a*)(3) (codified at Iowa Code § 814.6(1)(*a*)(3) (2020)). The State maintains that Treptow has not shown good cause and that, as a result, this court should not decide the straightforward legal issue raised by Treptow but should instead send the case off to a district court for an action in postconviction relief.

In my view, we should find that there is good cause to consider Treptow's claim on direct appeal. First, I would hold that good cause is categorically present to consider a challenge to a guilty plea on direct appeal where a defendant claims that the guilty plea is not supported by substantial evidence on the record or where the defendant raises any other legal challenge to the guilty plea for failure of the district court to comply with Iowa Rule of Criminal Procedure 2.8(2)(*b*). In the alternative, I would accept Treptow's invitation and adopt a version of the plain error doctrine sufficiently broad to permit consideration of his legal challenge to his guilty plea on direct appeal. Such an approach smoothly harmonizes a nearly

---

778, 784 (11th Cir. 1996), *abrogation on other grounds recognized by United States v. Davila*, 749 F.3d 982 (11th Cir. 2014). Further, an explicit waiver of appeal rights pursuant to a plea bargain does not prevent a defendant from attacking the resulting conviction on the grounds that it was not knowing and voluntary, was not taken in compliance with Federal Rule of Criminal Procedure 11, or was the product of ineffective assistance. *See, e.g.*, *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009); *United States v. Cockerham*, 237 F.3d 1179, 1184 (10th Cir. 2001); *United States v. Hernandez*, 242 F.3d 110, 113–14 (2d Cir. 2001) (per curiam); *Jones v. United States*, 167 F.3d 1142, 1144–46 (7th Cir. 1999); *see also* Robert K. Calhoun, *Waiver of the Right to Appeal*, 23 Hastings Const. L. Q. 127, 140 (1995) ("[D]efendants remain free to raise on appeal any issue which goes to the validity of the plea or the waiver itself[;] . . . there appears to be general consensus that an accused may raise the question of adequate assistance of counsel in making the waiver.").

universally accepted judicial doctrine with the good cause requirement of the new legislation.[3]

### B. Meaning of "Good Cause."

1. *Introduction.* At the outset, the legislature has declined to provide a definition of "good cause." The interpretation of the term has thus been delegated by the legislature to the courts. In one of our first cases construing S.F. 589, we noted that good cause means "a legally sufficient reason." *State v. Damme*, 944 N.W.2d 98, 104–05 (Iowa 2020). In *State v. Damme*, we held that a challenge to the sentence imposed pursuant to a guilty plea was not an attack on the plea itself and was therefore subject to direct appeal. *Id.* at 105.

Objectively, the term "good cause" is not a brittle and narrow expression but is an elastic term that permits application as required by the facts and circumstances. *See, e.g., Wilder v. Prokop*, 846 F.2d 613, 622 (10th Cir. 1988); *Dinko v. Wall*, 531 F.2d 68, 73–75 (2d Cir. 1976); *Jones v. Westinghouse Elec. Supply Co.*, 128 A.2d 808, 809 (Del. Super. Ct. 1957). Yet, while the term is elastic and usually not susceptible to a precise formula, it is "not so elastic as to be devoid of substance." *Compania Interamericana Exp.-Imp., SA v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)).

In its ordinary usage, the term "good cause" is a flexible catchall term designed to apply in a wide variety of facts and circumstances. The term ordinarily implies rationality and judgment, but not mathematical

---

[3]*See* Morton Gitelman, *The Plain Error Rule in Arkansas—Plainly Time for a Change*, 53 Ark. L. Rev. 205, 217 (2000) (noting that forty-seven states had adopted some version of the plain error rule). After publication of the Gitelman article, New Hampshire adopted plain error. *See* Jon M. Woodruff, note, *Plain Error By Another Name: Are Ineffective Assistance of Counsel Claims a Suitable Alternative to Plain Error Review in Iowa*, 102 Iowa L. Rev. 1811, 1816 n.19 (2017).

precision. *See, e.g., Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 933–34 (7th Cir. 2002) (stating that good cause for failure to timely serve must be supported by some reasonable basis for noncompliance); *State v. Pedockie*, 95 P.3d 1182, 1188 (Utah Ct. App. 2004) (stating good cause for purposes of speedy trial must have reasonable basis).

Where the legislature has not defined "good cause," we have noted that the term is capable of contraction and expansion by construction and that reducing it to a fixed meaning is nearly impossible. *Wiese v. Iowa Dep't of Job Serv.*, 389 N.W.2d 676, 680 (Iowa 1986). The term implies "adequate excuses that will bear the test of reason, just grounds for the action, and always the element of good faith." *Id.* (quoting *Mee's Bakery, Inc. v. Unemp. Comp. Bd. of Rev.*, 56 A.2d 386, 387 (Pa. Super. Ct. 1948)).

The State suggests that good cause means "extraordinary" circumstances. This would amount to a remarkable reworking of the statutory language. Surely that cannot be correct. In our evaluation of the elastic term used by the legislature, "good cause," we cannot substitute narrow and strict constructs that the legislature did not include in the statutory language.

**C. Good Cause as Measured by Judicial Economy**. One approach to good cause in the statute is to interpret the elastic term in a fashion that promotes its underlying purpose. The purpose of the statute, it seems, is to promote judicial efficiency. If so, good cause to consider challenges to guilty pleas would be present where a claim categorically involves only straightforward legal issues that can be handled by the appellate courts.

A challenge to a guilty plea for insufficient evidence would fall into that category. If challenges to a guilty plea for insufficient evidence were considered on direct appeal, there would be no need for expenditure of

appellate resources for some kind of triage.  A challenge to a guilty plea for lack of sufficient evidence is always a legal determination and is always based on the existing record developed below.  Unlike a claim of lack of voluntariness, there is no requirement of fact-finding that an appellate court would be ill equipped to make.  In cases involving challenges to plea bargains for insufficient evidence, there is no point in sending such a case off to a trial court for a postconviction-relief proceeding.  Such a move would waste judicial resources, not conserve them, and likely inject needless delay into the criminal justice system.  We should not lightly assume that the legislature intended to inject a burdensome and completely unnecessary and time-consuming review of sufficiency of the evidence challenges to guilty pleas by a postconviction-relief trial court; indeed, a good cause escape valve from such a pointless referral seems a workable and very reasonable interpretation.  *See State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 473 (Iowa 2017) (holding statutes should be interpreted in a manner that are reasonable and workable).

It is true that challenges to plea bargains based on insufficiency of the evidence have sometimes been couched in terms of ineffective assistance.  Under S.F. 589, ineffective-assistance claims may not be considered in direct appeal but must instead be filed in a postconviction action in district court.  The majority believes that because of the prohibition of consideration of ineffective-assistance claims on direct appeal, Treptow's attack on his guilty plea for lack of evidence must also be barred.

There are three responses.  First, as indicated above, the interplay between the unqualified bar of ineffective-assistance claims on direct appeal and the provision permitting direct appeal of certain guilty pleas upon a showing of good cause is not at all clear but rather gives rise to

ambiguity. *State v. Nall*, 894 N.W.2d 514, 518 (Iowa 2017) (holding that where a statute is ambiguous, the court may utilize tools of statutory construction). The good cause exception can certainly be read as a specific standalone provision for guilty pleas that is not overridden by the general bar against claims based on ineffective assistance of counsel, particularly if efficiency is seen as the overriding purpose of the statute.

Secondly, however, a challenge to a guilty plea based upon insufficient evidence, though often based on a claim of ineffective assistance of counsel, is also based upon our supervisory powers over inferior courts implemented through Iowa Rule of Criminal Procedure 2.8(2)(*b*). *See Hutchins v. City of Des Moines*, 176 Iowa 189, 213, 157 N.W. 881, 889 (1916) (noting that our supervisory authority of inferior tribunals "is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified" (citing *State v. Johnson*, 79 N.W. 1081 (Wis. 1899))). Notably, a number of cases dealing with consideration of unpreserved sufficiency-of-the-evidence claims do not mention ineffective assistance but focus solely on the violation of the underlying rule related to the taking of plea bargains. *See, e.g.*, *United States v. Vonn*, 535 U.S. 55, 74–76, 122 S. Ct. 1043, 1054–55 (2002) (applying plain error in context of unpreserved claim of insufficient evidence to support plea bargain without mention of ineffective assistance of counsel); *United States v. Garcia-Paulin*, 627 F.3d 127, 131 (5th Cir. 2010) (same); *Kiet Hoang Nguyen v. State*, 299 P.3d 683, 686 (Wyo. 2013) (same). As a matter of upholding the integrity of our judicial system, we simply do not tolerate convictions where there is no substantial evidence on the record to support them, regardless of whether a constitutional violation is present. Thus, good cause may be shown when

we engage in review of a guilty plea pursuant to our supervisory powers without offending the provision of S.F. 589 that seeks to prohibit direct appeals based upon ineffective assistance of counsel.

Third, by diverting the challenge to the sufficiency of the evidence to postconviction relief, the defendant will be deprived of the assistance of counsel in his first appeal as a matter of right. Most persons seeking to challenge the sufficiency of the evidence on a guilty plea will be incarcerated. From within the prison walls, unskilled defendants are required to prepare a postconviction-relief petition. They have no right to the assistance of counsel. In my view, where the postconviction-relief petition amounts to a first appeal as a matter of right, the defendant is entitled to counsel. My reasoning on the right to counsel issue is laid out in *Tucker*, ___ N.W.2d at ___, and is not repeated here. But it is clear that Treptow will be required to prepare a petition without the assistance of counsel even though the filing will be his first appeal. By finding good cause in this case, the constitutional infirmity would be avoided.

Based on the above, I would conclude that there is good cause to handle this claim on direct appeal rather than delay matters by sending the case off for a completely unnecessary postconviction-relief action.

**D. Incorporation of "Plain Error" in "Good Cause."**

1. *Introduction.* A second, relatively clean, straightforward answer to good cause is to incorporate under the statutory rubric of good cause a version of plain error doctrine that has been adopted by the vast majority of courts throughout the country. As will be demonstrated below, the plain error doctrine is broad enough to permit this court to consider on direct appeal the strictly legal claim including challenges to guilty pleas based upon insufficient evidence. By utilizing our supervisory powers to adopt plain error and incorporating it within the good cause requirement of

S.F. 589, we would achieve a desirable degree of harmony between the legislative directive and the power of the judicial branch to supervise inferior tribunals. Because the court has the power to create a plain error exception, and has the duty to confirm that guilty pleas have a factual basis, Treptow argues the court must now adopt a plain error exception to effectuate that duty in the wake of S.F. 589.[4]

The State urges us not to adopt a plain error approach. The State claims that Iowa courts "have been persistent and resolute in rejecting [plain error], and are not at all inclined to yield on the point." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) (citing *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997)). The State also argues that Treptow has not satisfied the requirements of "highest possible showing" to overcome court precedent. *See State v. Brown*, 930 N.W.2d 840, 854 (Iowa 2019).

2. *Development of plain error safety valve in federal courts.* The general rule is that legal error must be preserved below in order to be raised on appeal. Beginning over a hundred years ago and continuing into the twentieth century, however, federal and state court caselaw developed what has been called the plain error rule. The notion was that while ordinarily error should be preserved, there should be some safety valve to allow substantial justice to be done even where error was not preserved.

---

[4]Plain error doctrine is not based upon the theory of ineffective assistance of counsel but is instead based upon the proposition that a jurisdiction's highest court may exercise supervisory power over inferior tribunals and that they may waive preservation requirements in order to ensure fundamental fairness and preserve the integrity of the judicial system. *See, e.g., State v. Thomas*, 427 So. 2d 428, 433 (La. 1983) (citing supervisory, rulemaking, and inherent judicial power supporting plain error). And, as mentioned above, the leading cases dealing with consideration of unpreserved insufficient evidence claims in the plea bargaining context do not mention ineffective assistance but focus solely on the violation of the underlying rules related to plea bargaining. Therefore, there can be no argument that the provision of S.F. 589 that seeks to prevent unpreserved claims of ineffective assistance of counsel from being presented on direct appeal is no obstacle to adoption of plain error.

For instance, in *Wiborg v. United States*, the Supreme Court declared that "if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it." 163 U.S. 632, 658–59, 16 S. Ct. 1127, 1137 (1896). A few years later, the Supreme Court reviewed the qualification of a juror even though review exceeded the scope of the objection. *Crawford v. United States*, 212 U.S. 183, 192–97, 29 S. Ct. 260, 264–65 (1909). The following year, in *Weems v. United States*, the Supreme Court emphasized the right of the court to review unpreserved errors involving constitutional issues. 217 U.S. 349, 362, 30 S. Ct. 544, 547 (1910). Throughout the 1920s, the Court further expanded the exception to include error involving a judge's inappropriate questioning of the jury's numerical division and passion and emotion from jury members. *See N.Y. Cent. R. v. Johnson*, 279 U.S. 310, 318–19, 49 S. Ct. 300, 303–04 (1929) (holding that the failure of counsel to particularize an exception will not preclude the court, on its own motion, from protecting suitors in their right to verdict uninfluenced by opposing counsel's appeal to passion and prejudice); *Brasfield v. United States*, 272 U.S. 448, 450, 47 S. Ct. 135, 135–36 (1926) (reviewing unpreserved error involving relationship of court to jury). By the mid-twentieth century, the plain error doctrine had a firm footing in federal caselaw. *See generally* Jon M. Woodruff, note, *Plain Error By Another Name: Are Ineffective Assistance of Counsel Claims a Suitable Alternative to Plain Error Review in Iowa*, 102 Iowa L. Rev. 1811, 1815–16 (2017) (describing the development of the Supreme Court's plain error jurisprudence) [hereinafter Woodruff, *Plain Error*].

The federal doctrine was summarized in *United States v. Atkinson*. 297 U.S. 157, 159–60, 56 S. Ct. 391, 392 (1936). In *Atkinson*, the court emphasized the availability of plain error in criminal cases where "errors

are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 160, 56 S. Ct. at 392.

When the federal rules of criminal procedure were adopted in 1944, Federal Rule of Criminal Procedure 52(b) incorporated the prior plain error caselaw by providing that "a plain error that affects substantial rights may be considered even though it was not brought to the court's attention." According to the commentary, the rule "was drafted as a restatement of the common law." Jeffrey L. Lowry, *Plain Error Rule—Clarifying Plain Error Analysis Under Rule 52(b) of the Federal Rules of Criminal Procedure*, 84 J. Crim. L. & Criminology 1065, 1066 (1994).

In *United States v. Olano*, the Supreme Court elaborated on the plain error concept. 507 U.S. 725, 731–35, 113 S. Ct. 1770, 1776–78 (1993). In *Olano*, the Court stated that in order to qualify for plain error, the error must occur at the trial level, the error must be plain, and the plain error must "affect substantial rights." *Id.* Similarly, in *Henderson v. United States*, the Supreme Court emphasized that plain error may not be plain to the trial court but may become clear when a case is pending on appeal. 568 U.S. 266, 273, 133 S. Ct. 1121, 1127 (2013).

3. *Development of plain error safety valve in state courts.* In addition to adoption in caselaw and subsequent rule by the federal courts, the plain error doctrine in one form or another has been adopted in forty-eight states.[5] Iowa and Pennsylvania appear to be the two outliers.[6]

The development of plain error in the state courts is not unlike the federal path. For example, the Wisconsin Supreme Court early in the twentieth century declared that "[a]ny rule the enforcement of which

---

[5]*See* Woodruff, *Plain Error*, 102 Iowa L. Rev. at 1816 n.19.

[6]*See, e.g.*, *Rutledge*, 600 N.W.2d at 325; *Commonwealth v. Clair*, 326 A.2d 272, 273–74 (Pa. 1974).

results in a failure of justice should be carefully scrutinized and not blindly adhered to unless the abandonment of it will work more injustice than will follow if it be adhered to." *Cappon v. O'Day*, 162 N.W. 655, 657 (Wis. 1917).

Although the vast majority of states have adopted plain error, the precise test for determining whether to invoke the doctrine shows variation. In order to be within the scope of the doctrine, it has been said that the error must: be "fundamental error," *Davis v. State*, 661 So. 2d 1193, 1196–97 (Fla. 1995), *disapproved of on other grounds by Mack v. State*, 823 So. 2d 746 (Fla. 2002); be "affecting fundamental constitutional rights," *Fuselier v. State*, 654 So. 2d 519, 522 (Miss. 1995) (quoting *Luckett v. State*, 582 So. 2d 428, 430 (Miss. 1991), *overruled on other grounds by Bester v. State*, 188 So. 3d 526 (Miss. 2016)); *State v. Hanson*, 940 P.2d 1166, 1169 (Mont. 1997); involve "substantial rights," *Hasty v. United States*, 669 A.2d 127, 134 (D.C. 1995) (quoting *Olano*, 507 U.S. at 732, 113 S. Ct. at 1776); be "of law" and be apparent "on the face of the record," *State v. Blasingame*, 341 P.3d 182, 187 (Or. Ct. App. 2014) (quoting *State v. Brown*, 800 P.2d 259, 355 (Or. 1990) (en banc)); or involve a claim concerning only a question of law "or admitted facts [that] is determinative of the case" or "is necessary to serve the ends of justice or to prevent the denial of fundamental rights." *State v. Spotts*, 206 P.3d 510, 512 (Kan. 2009). In one case, it was suggested that plain error could be invoked "if good cause exists or if the ends of justice require consideration of the issue." *Johnson v. Commonwealth*, 458 S.E.2d 599, 602 (Va. Ct. App. 1995). That sounds a lot like S.F. 589's good cause provision. Other states have rather narrow formulations.

4. *Safety valve of direct appeal of ineffective-assistance claims in lieu of plain error in Iowa.* In Iowa, we have rejected in conclusory fashion the

plain error doctrine. *Rutledge,* 600 N.W.2d at 325. Yet, our caselaw rejecting plain error cannot be evaluated in a vacuum but must be considered in its larger legal context. If one looks at the broader legal landscape, Iowa has not been inhospitable to considerations of unpreserved error on appeal. Specifically, although we have rejected what has been labeled as plain error in the past, we have permitted a defendant to raise on direct appeal unpreserved claims under the rubric of ineffective assistance of counsel. *See, e.g., State v. Lucas,* 323 N.W.2d 228, 232 (Iowa 1982) (en banc). The access to direct appeal afforded by claims of ineffective assistance of counsel in Iowa has generally been broader than plain error in most jurisdictions.

As observed in a note in the Iowa Law Review, the relationship between plain error and ineffective assistance of counsel may be seen by comparing caselaw in the area of prosecutorial misconduct in closing arguments at a criminal jury trial. Woodruff, *Plain Error,* 102 Iowa L. Rev. at 1830–31. In *State v. Rutledge,* the court concluded that the prosecutor's closing was "plainly out of bonds" but held that the claim was not preserved because counsel did not object. 600 N.W.2d at 325. No ineffective-assistance-of-counsel claim was made in that case. No relief was provided. *Id.* at 327.

Four years later, this court decided *State v. Graves.* 668 N.W.2d 860, 867–68 (Iowa 2003). In this case, very similar prosecutorial misconduct occurred. *Id.* In *Graves,* however, the defendant brought his challenge as a claim of ineffective assistance for failure to object. *Id.* at 868. The *Graves* court reached the unpreserved error and provided the defendant with relief. *Id.* at 884. *Graves* shows that an unpreserved "plain error" can be reached on direct appeal if couched as a claim based on

ineffective assistance of counsel and if further factual development is not necessary to address the claim.

Under S.F. 589, however, claims of ineffective assistance of counsel can no longer be considered on direct appeal. If so, the need for a plain error rule is greater than it has been in the past. Plain error would no longer be redundant. With the enactment of S.F. 589, the Iowa legal landscape for direct appeal of unpreserved error has fundamentally shifted from prior years when ineffective-assistance claims provided the needed safety valve for review of fundamental errors on direct appeal.

5. *Application of plain error doctrine to attacks on convictions for insufficient evidence.* I now turn to the question of whether the plain error rule applies to unpreserved claims that a criminal conviction is not supported by sufficient evidence. According to a catalogue of cases compiled in 1990, at least twenty-five state jurisdictions had expressly held that appellate courts could consider sufficiency of evidence claims for the first time on appeal. *See State v. McAdams*, 594 A.2d 1273, 1275–76 (N.H. 1991) (Batchelder and Johnson, JJ., concurring specially) (listing cases); *see also Horton v. State*, 758 P.2d 628, 632 (Alaska Ct. App. 1988); *State v. Govan*, 744 P.2d 712, 717 (Ariz. Ct. App. 1987); *State v. Payne*, 530 A.2d 1110, 1111–12 (Conn. App. Ct. 1987); *Fields v. United States*, 484 A.2d 570, 576 (D.C. 1984); *People v. Foster*, 547 N.E.2d 478, 483 (Ill. App. Ct. 1989); *Mftari v. State*, 537 N.E.2d 469, 474 (Ind. 1989); *Knox v. Commonwealth*, 735 S.W.2d 711, 712 (Ky. 1987), *overruled on other grounds by Lane v. Commonwealth*, 956 S.W.2d 874 (Ky. 1997); *State v. Lubrano*, 563 So. 2d 847, 849 (La. 1990) (per curiam); *State v. Hanson*, 331 A.2d 375, 378 (Me. 1975); *People v. Patterson*, 410 N.W.2d 733, 738 (Mich. 1987); *Walker v. State*, 394 N.W.2d 192, 196 (Minn. Ct. App. 1986); *Medious v. State*, 375 So. 2d 405, 406 (Miss. 1979); *State v. Fosdick*, 776

S.W.2d 54, 56 (Mo. Ct. App. 1989); *State v. Doe*, 583 P.2d 464, 466 (N.M. 1978); *People v. White*, 561 N.Y.S.2d 756, 757–58 (N.Y. App. Div. 1990); *State v. Kopp*, 419 N.W.2d 169, 172–73 (N.D. 1988); *State v. Gardner*, 536 N.E.2d 1187, 1187–88 (Ohio Ct. App. 1987); *State v. Hitz*, 766 P.2d 373, 375–76 (Or. 1988); *State v. Larocco*, 665 P.2d 1272, 1273 n.4 (Utah 1983) (per curiam); *State v. Bressette*, 388 A.2d 395, 396 (Vt. 1978); *Jimenez v. Commonwealth*, 402 S.E.2d 678, 680–81 (Va. 1991); *City of Seattle v. Slack*, 784 P.2d 494, 499 (Wash. 1989) (en banc); *Beamon v. State*, 286 N.W.2d 592, 594 (Wis. 1980); *Marshall v. State*, 646 P.2d 795, 797 (Wyo. 1982).

There are many cases applying plain error analysis to claims that convictions were not supported by substantial evidence *after a trial.* The fountainhead federal plain error case, *Wiborg v. United States*, involved an unpreserved claim of insufficient evidence at trial. 163 U.S. at 658, 16 S. Ct. at 1137. The principle was reaffirmed in *Clyatt v. United States*, 197 U.S. 207, 222, 25 S. Ct. 429, 432 (1905), and in a number of subsequent federal cases. *See, e.g.*, *United States v. McKinney*, 120 F.3d 132, 134 (8th Cir. 1997). Many state courts have followed suit. *See, e.g.*, *Herrington v. United States*, 6 A.3d 1237, 1242 (D.C. 2010); *State v. Guay*, 33 A.3d 1166, 1171–72 (N.H. 2011); *City of Campbell v. Rosario*, 101 N.E.3d 681, 686 (Ohio Ct. App. 2018).

The question arises whether plain error can also be applied where the question is whether there was sufficient evidence to support a conviction *after a plea bargain.* In other words, in the application of the plain error rule to unpreserved substantial evidence questions, does it matter whether the underlying conviction was based on a plea bargain rather than a trial?

The answer to the question, according to the caselaw, is a resounding no.  In *United States v. Vonn,* the United States Supreme court made it clear that plain error could be applied to cases involving unpreserved insufficient evidence claims in the context of a plea bargain where the error is "plain, prejudicial, and disreputable to the judicial system."  535 U.S. at 65, 122 S. Ct. at 1050.  Other federal and state authorities consistently support the proposition that unpreserved claims of insufficient evidence supporting convictions based on guilty pleas may be considered under the plain error rubric even where the defendant did not move to withdraw the guilty plea or otherwise object below.  *See, e.g., Garcia-Paulin,* 627 F.3d at 131; *United States v. Taylor*, 627 F.3d 1012, 1016–18 (6th Cir. 2010); *United States v. Orozco-Osbaldo,* 615 F.3d 955, 958 (8th Cir. 2010); *Kiet Hoang Nguyen,* 299 P.3d at 686.

In sufficiency-of-the-evidence cases, it is sometimes suggested by the state that the availability of postconviction relief is adequate and that direct review based on plain error is unnecessary.  But as noted by the concurring opinion in *State v. McAdams*: "[T]his argument ignores the tremendous burden placed on a defendant seeking collateral review.  An indigent defendant . . . has no statutory or constitutional right to counsel beyond a first, direct appeal."  594 A.2d at 1279 (Batchelder and Johnson, JJ., concurring specially).  Further, the concurrence noted that

> [a] defendant whose conviction was plainly based on insufficient evidence should not be forced to spend several months or years imprisoned while he or she attempts to collaterally attack the conviction, whether pro se or with the aid of counsel.

*Id.*

6. *Inadequacy of postconviction relief.*  Under the majority approach, a claim for insufficiency of the evidence to support a plea may be raised in

an action for postconviction relief. For the reasons expressed in *Tucker,* ___ N.W.2d at ___, I regard this alternative an unconstitutional impairment of the right to counsel on the first appeal as a matter of right.

7. *Discussion.* So, the vast majority of states and federal courts all embrace plain error and many cases apply plain error in contexts very similar to this case. The legal environment has shifted if the ineffective-assistance-of-counsel provisions of S.F. 589 are enforced. Many jurisdictions apply plain error in the context of guilty pleas not supported by substantial evidence because it is the most efficient approach and avoids unnecessary delay. We should do the same.

As to the suggestion that we should engage in rulemaking before adopting plain error, I have two responses. First, plain error originally was not based on rules; the rules followed the caselaw. This is not unusual; we develop doctrines through the caselaw method all the time. Further, we can narrowly declare that whatever the confines of plain error, it is broad enough to include challenges to sufficiency of the evidence and reserve further elaboration to rulemaking or case-by-case development.

Second, it is our obligation, in this case, to interpret the term "good cause." We cannot decline to fill in the blank of what the statute contains pending rulemaking. Treptow is entitled to a determination of whether his case amounts to good cause. We must address the issue, now, in his case. If desirable, rulemaking can come later, but a decision for Treptow cannot wait.

Applying plain error, based on my review of the record, there was not substantial evidence to support Treptow's plea of guilty to the crime of gathering. As a result, I would reverse and remand to the district court. *Gines*, 844 N.W.2d at 442. On remand, the parties may seek to establish

a factual basis for the plea, engage in further plea bargaining, or bring the matter to trial.

## II. Conclusion.

For all of the above reasons, I would reverse and remand the case to the district court.